UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
AGNES THEODOSSIOU              :
                              :    HONORABLE JOSEPH E. IRENAS
            Plaintiff,        :
                              :    CIV. NO. 06-4137 (JEI/KMW)
     v.                       :
                              :
COMMERCE BANK, N.A.           :        OPINION
                              :
            Defendant.        :
```

**APPEARANCES:**

BARRON & POSTERNOCK, LLP
By:  Thomas Matthew Barron, Esq.
400 N. Church Street
Suite 250
Moorestown, NJ 08057
     Counsel for Plaintiff

BROWN & CONNERY, LLP
By:  Joseph G. Antinori, Esq., Susan M. Leming, Esq., William M.
     Tambussi, Esq.
360 Haddon Avenue
PO Box 539
Westmont, NJ 08108
     Counsel of Defendants


**IRENAS**, Senior District Judge:

     Presently before the Court are Defendant's Motion for

Summary Judgment (Docket No. 23), and Plaintiff's Cross-Motion

for Summary Judgment (Docket No. 25).  The Court has reviewed the

submissions of the parties, and for the reasons set forth below,

both Defendant's Motion for Summary Judgment and Plaintiff's

Cross-Motion for Summary Judgment will be denied.[1]

## I.

This case arises out of Plaintiff Agnes Theodossiou's termination by Defendant Commerce Bank, N.A. ("Commerce") in the months following her return from maternity leave. Plaintiff was hired by Commerce as an Assistant Vice President and Operations Manager for the Residential Mortgage Department in Commerce's Mount Laurel, New Jersey office on December 27, 2004. Her starting salary was $100,000 per year. (Pl. Dep. at 48-49, 61).

Plaintiff became pregnant at some point in early 2005, and advised Commerce as such in the spring or early summer of 2005. (Pl. Dep. at 125-127.) On October 12, 2005, Plaintiff requested a leave of absence under the Family and Medical Leave Act ("FMLA") for the impending birth of her child. (Def. Ex. 8.) Commerce denied her request for FMLA leave by letter dated October 18, 2005, because she had not yet completed one year of employment with the company as required by the FMLA. (Def. Ex. 9.) However, Plaintiff was granted "Emergency Medical Leave" ("EML") as provided for under Commerce's leave of absence policy. (Id.) Her EML began on November 1, 2005.

Plaintiff gave birth on December 13, 2005. (Pl. Dep. at

---

[1] The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

134.)  Beginning December 27, 2005, while she was still on EML,
Plaintiff became eligible for, and was granted, leave under the
FMLA and the New Jersey Family Leave Act ("NJFLA").  (Def. Ex.
11.)

During Plaintiff's leave, Commerce decided to undertake a
reorganization of it's Residential Mortgage Department.
(Greenberg Dep. at 27, 57-61.)  Steven Greenberg, the new
Managing Director of Residential Mortgage, and Michael Copley,
the Senior Vice-President of Retail Lending were primarily
responsible for the reorganization.  (Id.)  Though it is not
clear precisely when the final determination was made, as of
late-April 2006, it was likely that the position of "Operations
Manager" would be eliminated as part of the restructuring.
(Greenberg Dep. at 85-88; Id. at Ex. P-67.)  While discussions
and plans regarding the reorganization were ongoing during
Plaintiff's leave and shortly after her return, the plan was not
implemented or made public to Commerce employees until June 6,
2006.  (Id.; Pl. Dep. at 190.)

Plaintiff returned to work at Commerce on May 2, 2006.  (Pl.
Dep. at 175.)  When she returned, she allegedly asked Greenberg
what she should be doing and he sent her to the Quality Control
Department to update records where information was missing.  (Pl.
Dep. at 182-188.)  When asked if she could return to her old job,
Greenberg allegedly told her to "hang on, do something, and I'll

3

let you know." (Id. at 188.)  Additionally, Plaintiff testified at her deposition that someone else was occupying the cubicle that had once been hers, and she was assigned to an "employee cubicle" (as distinct from a "managerial cubicle").  (Id. at 187.)

However, Brian Tyson, who started as the Director of Residential Mortgage Operations on May 15, 2006, testified that he also gave Plaintiff some special projects, and that the work she was doing with the Quality Control Department was within the scope of the Operations Manager position.  (Tyson Dep. at 70-72.) Furthermore, Defendant claims, and Plaintiff does not deny, that Plaintiff received the same salary upon her return as when she left.  (Def. R. 51 Stat. ¶ 24.)

After the restructuring was announced on June 6, 2006, Plaintiff was informed that her position was being eliminated and she would have 60 days to try to secure another position with Commerce, but was unable to do so.  (Def. R. 51 Stat. ¶ 29.)  She was ultimately terminated on August 7, 2006.  (Def. Ex. 19.)

Plaintiff filed the instant Complaint on August 31, 2008. Count I of the Complaint alleges common law breach of contract.[2] Count II of the Complaint alleges that Commerce violated the FMLA because Plaintiff was not restored to her original job or an

_____

[2] The Court previously dismissed Count I of the Complaint on Defendant's motion to dismiss. *Theodossiou v. Commerce Bank, N.A.*, No. 06-4137, 2007 WL 1071961 (D.N.J. April 05, 2007).

4

equivalent position upon her return from leave, and because
Defendant discriminated against her for exercising her rights
under the FMLA, 29 U.S.C. § 2601 *et seq.* Count III alleges a
violation of the New Jersey Family Leave Act ("NJFLA"), N.J.
Stat. Ann. § 34:11B-1, *et seq.*, for the same conduct. Finally,
Count IV alleges a violation of the New Jersey Law Against
Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:1-1 *et seq.*,
because Defendant discriminated against her for taking maternity
leave.[3]


## II.

"[S]ummary judgment is proper 'if the pleadings,
depositions, answers to interrogatories, and admissions on file,

---

[3] In Plaintiff's brief, she states that she is withdrawing
her claims in Counts II and III to the extent that they are based
on a discrimination theory, as well as Count IV in it's entirety.
(Pl. Br. at 20, 26.) As such, Counts II and III will be
dismissed to the extent that are based on a discrimination
theory, and Count IV will be dismissed in it's entirety.
Plaintiff's only remaining claims therefore are for violations of
the FMLA and NJFLA on an entitlement theory.

It should be noted that Plaintiff's employment history, her
performance at Commerce, and the circumstances surrounding her
ultimate termination, including when people from outside of
Commerce were hired and what efforts were made to assist her in
finding a new position within Commerce, are explored in
considerable detail in the record. However, the majority of this
evidence goes to the question of whether there was discrimination
involved in the decision to terminate Plaintiff, and not whether
or not she was restored to her original position when she
returned from leave. Accordingly, it is not necessary for the
Court to discuss those aspects of the record in considering the
remaining claims based solely on an entitlement theory.

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (quoting Fed. R. Civ. P. 56(c)).  In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir.1986).

"'With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case.'"  *Conoshenti v. Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir.2004) (quoting *Celotex* ).  The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

### III.

#### A.

Plaintiff's surviving claims are for violations of the FMLA, 29 U.S.C. § 2601, *et seq.*, and the NJFLA, N.J. Stat. Ann.

§ 34:11B-1, *et seq.*  The FMLA entitles an eligible employee to "a
total of 12 workweeks of leave during any 12-month period . . .
[b]ecause of the birth of a son or daughter of the employee and
in order to care for such son or daughter."  29 U.S.C.
§ 2612(a)(1)(A).  Similarly, the NJFLA entitles an employee to "a
family leave of 12 weeks in any 24-month period upon advance
notice to the employer."  N.J. Stat. Ann. § 34:11B-4.  After the
employee returns from her leave, she must be "restored . . . to
the position of employment held by the employee when the leave
commenced," or another position "with equivalent employment
benefits, pay, and other terms and conditions of employment."  29
U.S.C. § 2614(a)(1); *see also* N.J. Stat. Ann. § 34:11B-7.

To establish a claim under the FMLA, a plaintiff must prove:

> (1) she is an eligible employee under the FMLA, (2)
> defendant is an employer subject to the requirements of
> the FMLA, (3) she was entitled to leave under the FMLA,
> (4) she gave notice to the defendant of her intention to
> take FMLA leave, and (5) the defendant denied her the
> benefits to which she was entitled under the FMLA.

*Parker v. Hanhemann University Hosp.*, 234 F. Supp. 2d 478, 483
(D.N.J. 2002).[4]  For violations of her FMLA rights, a plaintiff
can seek recovery under either an entitlement theory or a

---

[4] The elements of a claim under the NJFLA are similar to
those under the FMLA, and therefore the two claims will be
addressed together.  *See Santosuosso v. NovaCare Rehab.*, 462 F.
Supp. 2d 590, 596 n.4 (D.N.J. 2006).

Furthermore, Commerce does not contest that the first four
prongs of the analysis are satisfied, but only that Theodossiou
has failed to prove the fifth prong, that she was denied benefits
to which she was entitled.

retaliation theory.[5]  *Id.* at 485.  The entitlement theory under
the FMLA "is based on the prescriptive sections of the FMLA which
create substantive rights for eligible employees."  *Id.; see also*
*Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir.
1998).  "The action is not about discrimination; it is about
whether the employer provided its employee[] the entitlements
guaranteed by the FMLA."  *Parker*, 234 F. Supp. 2d at 485.

For Plaintiff to succeed on an entitlement theory claim, she
only needs to establish that "she was entitled to benefits under
the FMLA and that she was denied them."  *Id.*  One such benefit is
the right to be restored to her previous employment position.  29
U.S.C. § 2614(a)(1)(A).  Alternatively, the employee may be
"restored to an equivalent position with equivalent employment
benefits, pay, and other terms and conditions of employment."  29
U.S.C. § 2614(a)(1)(B).[6]  However, she is not entitled to

_____

[5] As noted above, Note 3 *supra*, Theodossiou is only pursuing
her claim based on an entitlement theory.

[6] 29 C.F.R. § 825.215 defines an "equivalent position" as
one that is
> virtually identical to the employee's former position in
> terms of pay, benefits and working conditions, including
> privileges, perquisites and status. It must involve the
> same   or   substantially   similar   duties   and
> responsibilities,   which   must   entail   substantially
> equivalent skill, effort, responsibility, and authority.

29. C.F.R. § 825.15(a).  However, while "[a]n equivalent position
must have substantially similar duties, conditions,
responsibilities, privileges and status as the employee's
original position," this requirement "does not extend to de
minimis, intangible, or unmeasurable aspects of the job."  *Id.* at
§ 825.215(e), (f).

"reinstatement if [she] would have lost her job during the leave period even if she had not been on leave." *Parker*, 234 F. Supp. 2d at 485 (citing 29 U.S.C. § 2614(a)(3)).

If Plaintiff is able to establish that she was not restored to her original or an equivalent position, the burden shifts to the Defendant to "show (1) that the position plaintiff held before leave would have been eliminated even if she had never taken the FMLA leave, and (2) that it offered plaintiff reinstatement in an equivalent position that she chose not to accept." *Id.* at 489 (internal citations omitted).

**B.**

Plaintiff does not dispute that she was allowed to return to work at Commerce, but rather whether she was actually reinstated to either her original position as Operations Manager, or an equivalent position, upon her return from leave.  There is no question that Plaintiff was allowed to return to work at the end of her leave on May 2, 2006, and that the announcement that the Operations Manager position was being eliminated was not made until June 6, 2006.  Defendant argues that Plaintiff was in fact restored to her original position as Operations Manager. Defendant contends that "[u]pon Plaintiff's return from leave, she performed duties that were consistent with and appropriate for her position as Operations Manager.  Furthermore, she

9

continued to receive the same salary that she had made before her leave began." (Def. R. 51 Stat. ¶ 24 (citing Tyson Dep. at 71-72).)

Plaintiff disputes, however, whether her duties and responsibilities were consistent with her original position. She claims that when she returned to work, Greenberg "told her to go to the Quality Control department" without a specific assignment, and ended up doing clerical work until she was ultimately terminated. (Pl. Resp. to Def. R. 51. Stat. ¶ 24 (citing Pl. Dep. at 182:16-187:10).)

In response, Defendant argues that the changes to Plaintiff's position at the time she returned, if any, were merely de minimis, and therefore legally irrelevant. *See* 29 C.F.R. § 825.215(f).[7] One of Plaintiff's chief complaints is that when she returned from leave someone else was occupying her office, and "when the office is taken, your old job is not there either." (Pl. Dep. at 188:7-12.) However, Courts have repeatedly held that a change in office space is precisely the

---

[7] *See Tanganelli v. Talbots, Inc.*, 169 F. App'x 123, 125-27 (3d Cir. 2006) (employer did not fail to reinstate employee to her original position when "her salary and benefits were unaltered, [] she remained part of the 'management loop,' [] she was given keys to the cash register . . . and [] she was responsible for the store's operation when the Store Manager was absent," despite comments made by supervisors that employee "did not fit in," employee was not given keys to her place of employment, employee was not invited to a manager's meeting, and employee's work product was discarded).

type of de minimis change that does not violate the FMLA.[8]
Similarly, when the salary remains unchanged, courts are
reluctant to find that there was in fact a change.  *See Oby v.
Baton Rouge Marriott*, 329 F. Supp. 2d 772, 781-82 (M.D.La. 2004).
Lastly, as of May 17, 2006, Commerce's organizational chart
indicates that Plaintiff did in fact hold the position of
Operations Manager.  (Def. Ex. 18.)[9]

However, Plaintiff also argues that the changes to her
responsibilities were more than de minimis, and that she was not
actually in a managerial position when she returned from leave.
She points to Brian Tyson's testimony that Plaintiff "didn't work
as a manager of the residential mortgage department during the
time that [Tyson] was [at Commerce]."  (Tyson Dep. 71:1-4.)
Furthermore, while it is clear from the record that the
Operations Manager position did have substantial supervisory

---

[8] *See Montgomery v. Maryland*, 266 F.3d 334, 341-42 (4th Cir.
2001) *vacated on other grounds*, 535 U.S. 1075 (2002) (court found
that employer had not violated the FMLA when upon return from
leave the employee no longer had her own office and had to share
space), *Devine v. Prudential Ins. Co. Of Am.*, No. 03-3971, 2007
WL 1875530 (D.N.J. June 28, 2007) (holding that a change in
office space typically falls in the de minimis category),
*Hillstrom v. Best Western TLC Hotel*, 265 F. Supp. 2d 117, 127 (D.
Mass 2003)("[The Court] cannot believe that Congress, in enacting
the FMLA, intended to make a federal case out of office space.").

[9] While there is no date on the document itself, and the
Certification accompanying the exhibits also does not provide a
date for the chart, Defendant's Reply Brief refers to it as
representing the department's organization on May 17, 2006.
(Def. Rep. Br. at 7.)

responsibilities, it is unclear from the record whether Plaintiff retained any of these responsibilities when she returned to Commerce after her FMLA leave.  All that is known about what Plaintiff did at Commerce following her return from FMLA leave is that she was initially given work to do in Quality Control, and then was given additional "special projects" from Tyson.  (Tyson Dep. at 70:15-25; Pl. Dep at 182:15-183:16.)

While there is no dispute as to whether or not Plaintiff was permitted to return to Commerce after her FMLA leave in some capacity, there is clearly a question as to whether or not she was restored to the Operations Manager position or a position that had "substantially similar duties, conditions, responsibilities, privileges and status."  29 C.F.R. § 825.215(e).  Making such a determination "is generally a question of fact for the jury." *Parker*, 234 F. Supp. 2d at 489. This is particularly true in this case because while certain changes were clearly de minimis, resolving the question of whether her duties and responsibilities were substantially similar requires "an understanding not only of the job descriptions, but also of the actual work performed and authority possessed by Plaintiff before and after her leave." *Reid-Falcone v. Luzerne County Community College*, No. 3:CV-02-1818, 2005 WL 1527792, at *7 (M.D.Pa. June 28, 2005).  However, based on the record in this case, the Court is unable to determine, as a

matter of law, that the position Plaintiff returned to at the conclusion of her leave was either the same or equivalent to the Operations Manager position she held when she began her FMLA leave.[10]

Because there is clearly a disputed issue of material fact as to whether or not the duties and responsibilities of Plaintiff's position upon her return were substantially similar to those when she began her FMLA leave, the Court will deny both parties' Motions for Summary Judgment.

## IV.

For the reasons discussed above, Defendant's Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment will be denied.

Dated: July 31, 2009

            s/ Joseph E. Irenas
            **Joseph E. Irenas, S.U.S.D.J.**

---

[10] The parties spend a considerable portion of their briefs addressing whether Plaintiff would have been terminated even if she had not been on leave. *See Parker*, 234 F. Supp. 2d at 489. However, this defense would only be applicable in the event that Plaintiff had actually been terminated while she was on leave, or if the allegations of discrimination were not withdrawn. There is no question that Plaintiff was allowed to return to work at Commerce upon the completion of her leave. Therefore, the only issue is whether she was returned to her original or an equivalent position at that time.

13